(No. 21304.—

THE MADISON COUNTY LAUNDRY, Plaintiff in Error, *vs.* THE INDUSTRIAL COMMISSION *et al.*—(EUNICE CONNER, Defendant in Error.)

*Opinion filed December 23, 1932.*

WHEELER, OEHMKE & DUNHAM, for plaintiff in error.

FERDINAND TUNNELL, for defendant in error.

Mr. JUSTICE DUNCAN delivered the opinion of the court:

Defendant in error, as widow of Ernest E. Conner, deceased, (herein referred to as defendant,) filed with the Industrial Commission an application for adjustment of her claim for compensation from plaintiff in error (herein called the company) on account of the death of her husband as a result of an accidental injury arising out of and in the course of his employment by the company. On February 24, 1931, the arbitrator entered an award in favor of defendant and against the company for $7.50 a week for 221 weeks and for $6.50 for one week. A petition for review was filed by defendant, and after a hearing on the same evidence before the arbitrator the Industrial Commission on August 19, 1931, set aside the arbitrator's award and entered its award for $11.54 a week for 324 weeks

and for $11.04 for one week. On *certiorari* proceedings the circuit court of Madison county on December 18, 1931, confirmed the decision of the Industrial Commission. This court has allowed a writ of error.

At the hearing before the arbitrator the parties entered into stipulations as to all questions of fact concerning the liability of the company, to the effect that defendant was entitled to recover compensation as widow of the deceased, that the deceased left no children under sixteen years of age, and that the sum of $60 had been paid to defendant as compensation. The only questions in dispute were as to the probable earnings of the deceased during the year preceding the injury if he had worked through the full year and as to what his average weekly wages should be found to be by the arbitrator. The award made by the arbitrator was based on a finding that the earnings of the deceased employee during the year next preceding the injury should be found to be $416 and his average weekly wage eight dollars. The award of the Industrial Commission is based on its finding that the annual earnings of employees in the same class of employment as that of the deceased was $1200 and that the average weekly wage was $20.08. It is the contention of the company that the award made by the arbitrator was in the correct amount.

The deceased was employed by the company about three weeks before the accidental injury to work during the day time as fireman at its laundry, which is located in Wood River, Madison county. A few days before the accidental injury evidence was discovered of an attempt by some unknown person to break into the laundry during the night time. Thereafter Conner slept at nights in the laundry on a cot that had been used by an employee of the company who had acted as fireman before Conner was employed. On the night of December 10, 1930, some person broke into the laundry and while there shot Conner and inflicted on him the wound of which he died on December 14, 1930.

The evidence for the company was the testimony of William S. Dews, the general manager of the laundry. His testimony is in substance as follows: He hired Conner as fireman at the laundry about three weeks before his death, when the man who had been acting as fireman became sick. Conner's wages were eight dollars a week. His duties were performed during the daytime, and up until a few days before December 10, 1930, he did not sleep at the laundry. Several days before December 10, 1930, it was discovered that someone had tried to break into the laundry in the night time. Conner made an investigation and at his own suggestion slept thereafter at night at the laundry. There was no agreement of any kind that he was to be paid any additional amount as wages for acting as watchman or for staying at the laundry at night. Conner was never paid, and there was no agreement to pay him, more than eight dollars a week. The man who acted as fireman at the laundry before Conner was employed slept at the laundry at night during his employment, and Conner, when he decided to sleep there, got down the cot that the other fireman used and slept on it. The man whose place Conner took had worked and slept at the laundry for two years and his wages were eight dollars a week.

Defendant testified that her husband, the deceased employee, told her that he was making eight dollars a week at the laundry; that she understood from her husband that he was to get more money for watching the laundry at night but that he did not tell her "what he was to get or anything about it;" that he told her he had been put to work at night and would be paid "if he could capture the man who was making the trouble."

The following witnesses testified for defendant to the amounts paid them as night watchmen, or as night watchmen and doing another job performed at the same time at Wood River or in that vicinity: Tom Williams was employed for three jobs as night watchman in the vicinity of

Wood River. He received as wages for his first job $80 per month, his house rent and coal for his use, and for the other two jobs three dollars a night. R. R. Ward was employed by the Alton Laundry Company, at Alton, seven or eight miles from Wood River, at wages of $21 a week. William T. Marrs was employed as janitor and night watchman by the banks of Wood River at three dollars per day or a night of eight hours, and that was the average wage paid for men employed to do such work as the deceased employee in this case did for his company. Guy Williams worked as night watchman in Wood River for the telephone people and some merchants. He fired a furnace at night and received as pay for the two jobs $20 per week. He further testified that Dews, manager of the company, told witness while Conner was employed at the laundry that he (Dews) was going to have Conner act as night watchman at the laundry. Marie Parker testified that she knew the deceased employee, Conner, while he was firing the furnace for the laundry company, and that Dews, the manager, told her Conner was making eight dollars a week. There is no testimony in this record that Conner was doing any work at night. The evidence merely shows that he slept at the laundry at night. His job in the daytime was a small one, in which he shoveled into the furnace only about one ton of coal a day.

The provisions of paragraph (c) of section 10 of the Workmen's Compensation act provide that if the injured person has not been engaged in the employment of the same employer for the full year immediately preceding the accident the compensation shall be computed according to the annual earnings which persons of the same class in the same employment and same location have earned during such period, or, if that be impracticable, the compensation shall be computed according to the annual earnings which persons in neighboring employments of the same kind have earned during such period. Guarding a laundry, guarding

a bank, guarding a store and guarding a telephone office or building in the same neighborhood or vicinity are "neighboring employments" within the meaning of said statute. However, the proof by the four witnesses aforesaid as to what they received for guarding a laundry, a bank, a store and a telephone office or building is not applicable to the other proof in the case and for that reason cannot be considered. The defendant has utterly failed to prove that the company hired or agreed to pay her husband any sum for guarding the laundry. Her evidence in that regard is to the effect that her husband told her that he had been put to work at night to guard the laundry and that he would be paid by the company for that service if he captured the intruder. He did not capture the intruder, and the proof is that the intruder killed him. Dews' evidence is to the effect that the contract with the deceased was to fire the furnace and that he was only permitted to sleep there at his own request and that he was to be paid for his services eight dollars a week. The testimony of defendant's witness Marie Parker corroborated Dews in his evidence. The record evidence shows that the company did not employ more than one man at a time at its laundry as fireman. It further shows that Conner was employed temporarily to take the place of the fireman who preceded him and who was unable to work because of illness and that Conner was to receive the same wages as the man he relieved. It also shows that the amount of wages paid for a full year to the employee relieved by Conner was $416. It therefore appears that the annual earnings of persons of the same class and in the same employment and the same location as was Conner at the time of his accidental injury during the year immediately preceding such injury could not, under the evidence, be found to be more than $416. The award of the Industrial Commission was based on a finding of annual earnings of $1200 and was erroneous.

The judgment of the circuit court is reversed and the cause is remanded to that court, with directions to set aside the award of the Industrial Commission and to remand the cause to the commission with directions to make the same award that was made by the arbitrator.

*Reversed and remanded, with directions.*